MARC J. WINTHROP – State Bar No. 63218
CHARLES LIU – State Bar No. 190513
**WINTHROP COUCHOT**
**PROFESSIONAL CORPORATION**
660 Newport Center Drive, Ste 400
Newport Beach, CA 92660

Telephone:  (949) 720-4100
Facsimile:  (949) 720-4111

General Insolvency Counsel for
Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PHAGE BIOTECHNOLOGY CORPORATION,<br><br><br><br>Debtor and Debtor-in-Possession | Case No. 08-09859-LA11<br><br>Chapter 11 Proceeding<br><br><br>**DEBTOR'S <u>EMERGENCY</u> MOTION FOR ORDER APPROVING ADDITIONAL LOANS UNDER DEBTOR-IN-POSSESSION LOAN; DECLARATIONS IN SUPPORT THEREOF** |

Phage Biotechnology Corporation, a Delaware corporation, the debtor and debtor-in-possession in the above entitled Chapter 11 proceeding (the "Debtor"), hereby moves the Court, <u>on an emergency basis</u>, and requests an interim hearing on or before August 14, 2009, for an order granting the following relief:

A)  Authorizing the Debtor to enter into that certain Extension and Amendment to Loan Agreement, Amendment to Secured Convertible Promissory Note, Amendment to Security Agreement, and Amendment to Lenders Rights Agreement (the "Amended DIP Facility") attached in substantially final form to the accompanying Declaration of Thomas Stegmann (the "Stegmann Declaration") as Exhibit "A;"

B)  Approving the extension of the maturity date of the Loan Agreement, Security Agreement,  Lenders Rights Agreement, and Secured Promissory Note, all dated November 19, 2008 (the "Original DIP Facility") to June 30, 2010, for an extension fee of $75,000;

C)  Approving the additional funding of up to $1,000,000 pursuant to the Original DIP Facility as amended by the Amended DIP Facility (the "Amended DIP Loan");

D)  Authorizing the use of the Amended DIP Loan on an emergency basis in accordance with the interim budget attached to the Stegmann Declaration as Exhibit "B" (the "Interim Budget") until a final hearing is set on this Motion;

E)  Authorizing the use of the Amended DIP Loan in accordance with the budget attached to the Stegmann Declaration as Exhibit "C" (the "Budget") after the final hearing on this Motion;

F)  Authorizing the Debtor to exceed any line item in the Interim Budget and Budget by up to twenty percent (20%) in any one month, as long as the overage for all items in the aggregate does not exceed fifteen percent (15%)

1                of the total budget amount for that month, and providing that any unused

2                funds in one period may be carried over and used in a later budget period;

3     G)      Setting a final hearing on this Motion in accordance with the requirements

4                of Rule 4001 of the Federal Rules of Bankruptcy Procedure; and

5     H)      Granting such further relief as the Court deems just and proper.

6        This motion is made on the basis of the Stegmann Declaration, the Declaration of Charles

7 Liu, the within the points and authorities, and on such other evidence as the Court elects to

8 consider prior to or at the hearing on this matter.

9

10 DATED:  July 31, 2009                 **WINTHROP COUCHOT**
                                      **PROFESSIONAL CORPORATION**

11

12                                By:   /s/ Marc J. Winthrop

13                                    Marc J. Winthrop
                                   Charles Liu

14                              General Insolvency Counsel for
                             Debtor and Debtor-in-Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I

## **PRELIMINARY STATEMENT**

Phage Biotechnology Corporation, the debtor and debtor-in-possession herein ("Phage" or "Debtor") is in the business of developing and commercializing an efficient method of manufacturing bio-pharmaceuticals with its proprietary technology.  On October 2, 2008, certain creditors commenced an involuntary Chapter 7 case against the Debtor (the "Petition Date").  On October 28, 2008, the Debtor converted the case into a voluntary Chapter 11 case.

The Court previously entered an order authorizing the Debtor to enter that certain Loan Agreement, Secured Convertible Promissory Note, Security Agreement, and Lenders Rights Agreement, all dated November 19, 2008 (the "Original DIP Loan") to preserve the value of Debtor's business and provide the Debtor access to critical funds up to $1,500,000 provided for in the Original DIP Loan from the "Lenders," as defined in the Original DIP Loan (the "Original DIP Facility").   The Debtor has operated pursuant to the Court-approved budget and has sought investments to fund the reorganization Debtor seeks to achieve pursuant to Chapter 11 of the Bankruptcy Code.  The Debtor will soon exhaust the Original DIP Loan and requires additional funds to continue its efforts to reorganize, among these efforts is the continued negotiations with potential investors who may provide the capital needed to facilitate a successful reorganization.

By this Motion, Debtor seeks authority to enter into that certain Extension and Amendment to Loan Agreement, Amendment to Secured Convertible Promissory Note, Amendment to Security Agreement, and Amendment to Lenders Rights Agreement (the "Amended DIP Facility") attached in substantially final form to the accompanying Declaration of Thomas Stegmann (the "Stegmann Declaration") as Exhibit "A," to provide the Debtor with additional funding of up to $1,000,000 pursuant to the Original DIP Facility as amended by the Amended DIP Facility (the "Amended DIP Loan").  The Debtor also seeks approval of an extension of the maturity date of the Original DIP Loan to June 30, 2010, for an extension fee of $75,000.

To preserve the value of its business, the Debtor needs the financing provided for in the Amended DIP Loan.

## II

## GENERAL BACKGROUND FACTS REGARDING THE DEBTOR

### A)    The Debtor.

The Debtor is a Delaware corporation with its corporate office and its research and manufacturing facilities located in San Diego, California.  The Debtor generates manufacturing and R&D revenue for work performed at the request of a related company, CardioVascular Biotherapeutics ("Cardio"). The revenue generated from this sole customer is not enough to produce a cash profit. The Debtor currently employs 11 people, including part time employees and consultants of various kinds.   From the Debtor's inception until October 7, 2008, the Debtor's Chairman, President, and CEO was Daniel Montano ("Montano").  Mr. Montano resigned from all positions with the Debtor on or about October 7, 2008.  The Debtor's current CEO is Thomas Stegmann.

### B)    The Debtor's Business.

The Debtor was founded in 1998 to commercialize an efficient method of manufacturing bio-pharmaceuticals which was invented by a group of Ukrainian scientists.  As a development stage company which is still not generating significant revenue, the Debtor depends significantly on external funding for survival and progress.  A majority of the external funding provided to date has come from the holders (the "Noteholders") of the Debtor's promissory notes (the "Notes").  The Debtor's promissory notes were issued at various dates from 2001 through to 2004 with a three year maturity date.  The Debtor raised a total of $16.7 million in the period from 2001 to 2005 from two series of convertible promissory notes.  Series I totaled $11.6 million principal with 233 Noteholders and Series II totaled $5.1 million of principal with 20 Noteholders.  The principal and accrued interest of these Notes now total approximately $23.5 million, or approximately 75% of the Debtor's total debt. The corporate books of record of the Debtor are unaudited.

The Debtor has a contractual relationship with Phage Biotech Ukraine LLC, located in Kiev, Ukraine ("Phage Ukraine"), which employs a research team and supports the San Diego manufacturing facility.  Substantially all of the Debtor's original intellectual property was sourced from Phage Ukraine.

1    The Debtor's intellectual property includes five U.S. patents and related foreign patent

2    approvals in European countries with large markets for the Debtor's drugs.  In Japan, three of the

3    Debtor's U.S. Patents are currently being examined.

4    The Debtor's main route to commercialization and profitability is to seek further revenue

5    generating activities for its licensed San Diego manufacturing facility, and to gain U.S. Food and

6    Drug Administration ("FDA") approval for its bio-generic and proprietary drug portfolio to be

7    manufactured by the Phage process.  At present two compounds are in FDA clinical trials: Phage's

8    Human Growth Hormone ("HGH") for short stature children and Cardio's Fibroblast Growth

9    Factor ("FGF") for treatment of severe coronary heart disease, with a third clinical trial for which

10    Phage has received FDA approval to begin using FGF as a wound healing treatment.

11    **C)    Events Precipitating This Chapter 11 Filing.**

12    The Debtor's financial problems and the consequent need to file this bankruptcy proceeding

13    were primarily caused by the following problems:

14    As a start up company, the Debtor has minimal income and thus needs infusions of outside

15    capital in order to fund its operations of developing and commercializing its intellectual property.

16    From 1998 to 2008, the Debtor raised net capital proceeds of $24.5 million in common and

17    preferred stock, and note and loan financing.  However, from late summer 2005 until summer of

18    2008, the Debtor only raised net proceeds of $6.0 million of outside capital which was grossly

19    inadequate in relation to the Debtor's needs, maturing Note obligations, and the scale of its

20    opportunity.  This failure to raise sufficient capital in the last several years led to the Debtor

21    defaulting on its Note obligations as well as obligations to other creditors.

22    **E)    The Involuntary Bankruptcy Filing and Conversion to Chapter 11.**

23    Because of the Debtor's default under the Notes as well as the Debtor's default of its

24    obligations to one of its board members, on October 2, 2008 the following creditors of the Debtor

25    filed an involuntary Chapter 7 petition against the Debtor: Sergiy Buryak; International Legal

26    Consultants; Clifton Melvin; Simon Kornberg; Jon Kornberg; Forest Nominees Ltd.; Shellac

27    Limited; Alex Catto; Iain Little; Colin Abraham; Pang Yen Chen; Colin MacNab; Robert &

28

1  Katrina Chanson; Lalique Holdings; Fabio Pelli; Russel Earl Wayne Lotherington; Jonathan

2  Bonsey; Paul Murray; and Lindsey Fuller (collectively, "Petitioning Creditors").

3      Concurrently with the involuntary petition on October 2, 2008, the Petitioning Creditors

4  filed a motion for the appointment of an interim trustee.   On October 7, 2008, Mr. Montano

5  resigned and the Debtor appointed one of its board members, Dr. Stegmann, to be the Debtor's new

6  CEO.  Because the Petitioning Creditors have great confidence in Dr. Stegmann, the Petitioning

7  Creditors withdrew the motion for appointment of an interim trustee.  The Debtor also appointed

8  two of the Petitioning Creditors, Richard Ritter and Robert Chanson, to the Debtor's board.  The

9  Debtor's new board decided it is in the Debtor's best interest to reorganize in a Chapter 11 case so

10  the Debtor converted its involuntary Chapter 7 case to a voluntary Chapter 11 case.

11      **F)**    **The General Outline of Turnaround Plan.**  The Debtor's turnaround effort, which

12  is now substantially underway, first focused on obtaining emergency capital to pay the Debtor's

13  operating expenses and protect its property.  Thus stabilized, the Debtor has been pursuing long

14  term capital to develop and commercialize its intellectual property.

15      **G)**    **Assets and Liabilities.**  The table below summarizes the value of the Debtor's

16  unaudited assets as of May 31, 2009 that serve as collateral for the secured claims affected by this

17  Motion:

18                        **ASSETS**

| | | |
|---|---:|---|
| Current Assets: | | |
| Unrestricted Cash | $  73,556 | |
| Accounts Receivable - related party | 95,000 | a) |
| Prepaid Expenses | 47,367 | |
|    Total Current Assets | 215,923 | |
| | | |
| Property, Plant, and Equipment (net) | 353,135 | |
| Due from Affiliate | 221,000 | b) |
| Other (Security Deposits) | 176,208 | c) |
|    Total Assets | $  966,266 | |

a) Due from a related party, Cardio

b) Due from GHL for sales of preferred shares

c) Deposits for two leases and utilities

The above values are taken from the Debtor's May 31, 2009 balance sheet (unaudited). They reflect accounting values (depreciated cost, etc.) not market values. The Debtor believes that the market value of the Debtor's assets is less than the values indicated above.

The Debtor does not believe there are any secured creditors in this case. Debtor's counsel performed a LEXIS search to confirm this. No secured claims undisclosed by this search. Of the Debtor's total unsecured debt, approximately $23.5 million, or 75%, is represented by Noteholder claims.

**H)**    **The Amended DIP Facility**. The terms of the Amended DIP Facility are summarized below:

| The Amended DIP Facility | |
|---|---|
| Line Amount | One million dollars ($1,000,000) |
| Advances | $200,000 upon Court approval of the Amended DIP Facility (the "Initial Disbursement"); further disbursements upon the Lender's approval up to a total of $1,000,000. |
| Interest Rate | Interest will accrue at the annual rate of 10%. |
| Term | The Loan matures on June 30, 2010. |
| Security | All amounts owing under the Original DIP Facility and Amended DIP Facility will be secured by a first priority perfected security interest in and lien on all assets (tangible, intangible, real, personal and mixed) of the Debtor, whether now owned or hereafter acquired, including, without limitation, accounts, inventory, equipment, capital stock in subsidiaries, investment property, instruments, chattel paper, real estate, leasehold interests, contracts, patents, copyrights, trademarks and other general intangibles, and all products and proceeds thereof. |

The foregoing is a summary of the material terms of the Amended DIP Facility. In the event of a discrepancy between the summary of the terms described herein and the terms of the Amended DIP Facility, the terms of the Amended DIP Facility documents control. Accordingly all creditors and parties-in-interest are urged to read the Amended DIP Facility, in substantially final form, attached to the Stegmann Declaration as Exhibit "A" in its entirety.

## III

## **RELIEF IS JUSTIFIED ON AN EMERGENCY BASIS**

In section 363(c)(3), Congress recognized that preliminary hearings on cash collateral would frequently be held on an emergency basis by stating therein that such hearing "shall be scheduled in accordance wit the needs of the debtor". 11 U.S.C. § 363(c)(3). The courts have also recognized that emergency relief on the use of cash collateral is necessary after a case is filed. In re Center Wholesale, Inc., 759 F. 2d 1440, 1444 (9th Cir. 1985) ("We realize that 'in certain circumstances the entire reorganization effort may be thwarted if emergency relief is withheld' and that reorganization under the Bankruptcy Code 'is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations.' … It is for this very reason that Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the debtor.' "); In re Sullivan Ford Sales, 2 B.R. 350, 355 (Bankr.D.Me.1980).

As indicated above, the Debtor is an operating company that is developing and commercializing an efficient method of manufacturing bio-pharmaceuticals with its proprietary technology. To successfully operate post-petition and preserve the value of this business enterprise at this critical juncture, the Debtor needs immediate relief from this Court.

As indicated in the attached Declaration of Thomas Stegmann, all of the items set forth in the Interim Budget are necessary to avoid immediate and irreparable harm to the Debtor.

Without the immediate ability to pay these costs and expenses, the Debtor cannot continue its business operations. On these facts and circumstances good cause exists for emergency relief. In order to continue operations the Debtor needs immediate relief from this Court. On these facts and circumstances good cause exists for an expedited hearing.

1

# V

2

## COURT APPROVAL OF THE AMENDED DIP LOAN

3

## IS WARRANTED UNDER SECTION 364(c)

4

Section 364(c) of the Bankruptcy Code sets forth the criteria that must be satisfied to

5

obtain a post-petition loan having priority over all other administrative claims:

6

> (c) If the trustee is unable to obtain unsecured credit allowable under section

7

> 503(b)(1) of this title as an administrative expense, the court, after notice and a
> hearing, may authorize the obtaining of credit or the incurring of debt -

8

> .....

9

> (1) with priority over any or all other administrative expenses of the kind
> specified in section 503(b) or 507(b) of this title.

10

11 U.S.C. §364(c)(1).

11

12

### A.    The Debtor Has been unable to obtain financing by any other means.

13

As stated above and set forth in the Stegmann Declaration, the Debtor must immediately

14

obtain financing in order to provide needed liquidity.  Despite the Debtor's diligent efforts to

15

obtain financing from other sources, it has been unable to obtain credit on any more favorable basis

16

than what is set forth in the Amended DIP Loan.  Accordingly, the terms presented to the court are

17

the best available in the market place at this point in time, for this type of loan, given the Debtor's

18

substantially overleveraged balance sheet, and its history of losses.

19

On the basis of the evidence submitted herewith, the Debtor has met the first prong of its

20

burden under Section 364(d), to wit, that it cannot find financing on more favorable terms.  See, In

21

re Aqua Associates, 123 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("Obtaining credit should be

22

permitted not only because it is not available elsewhere, which could suggest the unsoundness of

23

the basis for use of the funds generated by the credit, but also because the credit acquired is of

24

significant benefit to the debtor's estate and that the terms of the proposed loan are within the

25

bounds of reason, irrespective of the inability of the debtor to obtain comparable credit

26

elsewhere."); In re Ames Dept. Stores, Inc., 115 B.R. 34, 37 (Bankr. S.D.N.Y. 1990) ("A court,

27

however, may not approve any credit transaction . . . unless the debtor demonstrates that it has

28

reasonably attempted, but failed, to obtain unsecured credit under Sections 364(a) or (b). . . The

1  cases clearly establish that although a debtor is not required to seek credit from every possible

2  source, a debtor must show that it has made reasonable effort to seek other sources of credit

3  available under section 364(a) and (b)."); In re Snowshoe Co., Inc., 789 F. 2d 1085, 1088 (4th Cir.

4  1986) ("The statute imposes no duty to seek credit from every possible lender before concluding

5  that such credit is unavailable.  This is particularly true when, as the court determined here, time is

6  of the essence..."); In re Reading Tube Industries, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987)

7  (Chapter 11 debtor seeking Bankruptcy Court approval of post-petition financing agreement which

8  would grant lender superpriority must demonstrate under 11 U.S.C. §364(d) unsuccessful good

9  faith effort to obtain less onerous financing by proving debtor attempted to contact at least several

10  available lending institutions).

11     **B.     The Debtor has good business reasons justifying the proposed loan.**

12         To obtain relief under Section 364(c) a debtor must provide evidence that there is a good

13  business reason justifying the proposed financing, and that the Debtor cannot secure the same

14  financing terms on an administrative priority basis.  As more fully explained in the Stegmann

15  Declaration, the Debtor is seeking the financing to provide liquidity to continue post-petition

16  operations in order to obtain the long term investment needed to successfully reorganize.  On the

17  facts of this case, the Debtor is entitled to relief under Section 364(c)(1). See, In re Snowshoe Co.,

18  Inc., 789 F. 2d 1085, 1088 (4th Cir. 1986) ("The statute imposes no duty to seek credit from every

19  possible lender before concluding that such credit is unavailable.  This is particularly true when, as

20  the court determined here, time is of the essence...").

21     **C.     The Amended DIP Loan Does Not Contain Provisions Proscribed by the Local**

22  **Rules.**

23         As indicated in the attached Declaration of Charles Liu, the Amended DIP Loan does not

24  contain any of the following:

25         1. Provisions that grant cross-collateralization protection (other than replacement liens) to

26  the prepetition secured creditor (i.e.; clauses that secure prepetition debt by post-petition assets in

27  which the secured creditor would not otherwise have a security interest by virtue of its prepetition

28  security agreement or applicable law).

2. Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or debt or the waiver of claims against the secured creditors without first giving parties in interest at least seventy five (75) days from the entry of the interim order and the official committee of unsecured creditors, if formed, no less than sixty (60) days notice from the later of the date of its formation or the date of its retention of counsel to investigate such matters, unless otherwise directed by the court.

3. Provisions that seek to waive rights under 11 U.S.C. § 506(c).

4. Provisions that grant immediately to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, and 549.

5. Provisions that "roll over" prepetition debt of the prepetition secured creditor to postpetition debt.

6. Provisions that provide carveouts for administrative expenses that do not treat all professionals equally or on a pro rata basis.

7. Provisions in any agreement for use of cash collateral, financing or conditioning the automatic stay that in effect operate to divest the debtor-in-possession of any discretion in the formulation of a plan or administration of the estate or limit access to the court to seek any relief under other applicable provisions of law. Such provisions include, without limitation, agreements with respect to the treatment of claims.

## VI

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court grant the relief prayed for herein.

DATED:  July 31, 2009

**WINTHROP COUCHOT
PROFESSIONAL CORPORATION**

By:   /s/ Marc J. Winthrop
       Marc J. Winthrop
       Charles Liu
      General Insolvency Counsel for
      Debtor and Debtor-in-Possession

## DECLARATION OF THOMAS STEGMANN

I, Thomas Stegmann, hereby declare to the best of my knowledge and belief as follows:

1.      I am the Chief Executive Officer of Phage Biotechnology Corporation, the debtor and debtor-in-possession herein ("Phage" or "Debtor"). The facts stated herein are within my personal knowledge or information, whether acquired directly, or through my familiarity with the Debtor. The opinions expressed herein represent the opinions of the Debtor entity, of which I am an authorized agent, unless otherwise indicated.

2.      Attached hereto as Exhibit "A" is a copy of that Extension and Amendment to Loan Agreement, Amendment to Secured Convertible Promissory Note, Amendment to Security Agreement, and Amendment to Lenders Rights Agreement (the "Amended DIP Facility") in substantially final form.

3.      Attached hereto as Exhibit "B" is a copy of the Interim Budget for the use of the proceeds of the Amended DIP Loan prior to the final hearing on the Motion.

4.      Attached hereto as Exhibit "C" is a copy of the Budget for the use of the proceeds of the Amended DIP Loan after the final hearing on the Motion.

5.      The Debtor is a Delaware corporation founded in 1998 with its corporate office and research and manufacturing facilities located in San Diego, California. The Debtor generates manufacturing and R&D revenue for work performed at the request of a related company, CardioVascular Biotherapeutics ("Cardio"). The revenue generated from this sole customer is not enough to produce a cash profit, and pay Note Obligations and other debts, and, in fact, the Debtor has not received money from Cardio for some time. The Debtor currently employs 11 people, including part time employees and consultants of various kinds.  From the Debtor's inception until October 7, 2008, the Debtor's Chairman, President, and CEO was Daniel Montano ("Montano").

6.      The Debtor's executive offices and R&D facility are in San Diego, California consists of approximately 2,000 square feet of industrial space, pursuant to a lease expiring in 2009. The Debtor's manufacturing facility in San Diego, California consists of approximately 7,000 square feet of industrial space, pursuant to a lease expiring in 2013.

6.      As a development stage company that does not generate significant revenue, the Debtor depends significantly on external funding for survival and progress. A majority of the external funding provided to date has come from the holders (the "Noteholders") of the Debtor's promissory notes (the "Notes").  The Debtor's promissory notes were issued at various dates from 2001 through 2004 with a three year maturity date.  The Debtor raised a total of $16.7 million in the period from 2001 through 2004 from two series of convertible promissory notes.  Series I totaled $11.6 million principal with 233 Noteholders and Series II totaled $5.1 million of principal with 20 Noteholders.  The principal and accrued interest of these Notes now totals approximately $23.5 million. From late summer 2005 until summer of 2008, the Debtor raised net proceeds of $3.0 million through sales of Series B Preferred Shares, and an additional $3.0 million of outside capital in the form of loans to the Debtor. This capital totaling $6.0 million was grossly inadequate in relation to the Debtor's current Note Obligations due of $23.5 million, other loans and trade debt, its current operating needs, and the scale of its opportunity. This failure to raise sufficient capital has led to the Debtor defaulting on its Note obligations as well as obligations to other creditors. As far as the Debtor is aware, there are no secured creditors in this case other than the DIP Lender who provided the DIP Loan and who is providing the Amended DIP Loan.

7.      The Debtor's intellectual property includes five U.S. patents and related foreign patent approvals in European countries with large markets for the Debtor's drug candidates.  In Japan, three of the Debtor's U.S. Patents are currently being examined.

8.      The Debtor's main route to commercialization and profitability is to seek further revenue generating activities for its licensed San Diego manufacturing facility, and to gain U.S. Food and Drug Administration ("FDA") approval to commercialize its bio-generic and proprietary drug portfolio to be manufactured by the Phage process.  At present two compounds are in FDA clinical trials: Phage's Human Growth Hormone ("HGH") for short stature children and Cardio's Fibroblast Growth Factor ("FGF") for treatment of severe coronary heart disease, with a third clinical trial for which Phage has received FDA approval to begin using FGF as a wound healing treatment.

9.     On October 2, 2008 certain creditors of the Debtor filed an involuntary Chapter 7 petition against the Debtor (the "Petitioning Creditors").

10.     On October 7, 2008, Mr. Montano resigned and the Debtor appointed one of its board members, Dr. Stegmann, to be the Debtor's new CEO.  The Debtor also appointed two of the Petitioning Creditors, Richard Ritter and Robert Chanson, to the Debtor's board.  The Debtor's new board decided it is in the Debtor's best interest to reorganize in a Chapter 11 case so the Debtor converted its involuntary Chapter 7 case to a voluntary Chapter 11 case.

11.     The Debtor's turnaround effort, which is now substantially underway, first focused on obtaining emergency capital to pay the Debtor's operating expenses and protect its property.  Thus stabilized, the Debtor has been pursuing long term capital to develop and commercialize its intellectual property.

12.     The Debtor is seeking this additional financing to provide liquidity for post-petition operations and even more importantly to ensure the continued support of its employees and vendors providing critically needed goods and services while the Debtor proceeds with its clinical trials and, more importantly, continues cultivating relationships targeted at raising the long term capital needed to conduct the reorganization.

14.     Despite the Debtor's diligent efforts to obtain financing from other sources prepetition, it has been unable to obtain credit. Accordingly, the terms presented to the court are believed to be the best available option for the Debtor at this point in time, for this type of emergency capital loan, given the Debtor's substantially overleveraged balance sheet, and its history of losses.

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 29th day of July 2009, in Petersberg, Germany.

Prof. Dr. med. Th. Stegmann

Thomas Stegmann, MD, PhD, CEO
Phage Biotechnology Corporation

## DECLARATION OF CHARLES LIU

I, Charles Liu, hereby declare and state as follows:

1.     I am an attorney with Winthrop Couchot Professional Corporation, the proposed general insolvency counsel to Phage Biotechnology Corporation, the debtor and debtor-in-possession herein ("Phage" or "Debtor"). The statements made herein have been acquired through my personal knowledge or information. This declaration is in support of the Debtor's Motion (the "Motion") for Use of the Debtor-in-Possession Loan (the "Amended DIP Loan").

2.     The Amended DIP Loan, attached to the Stegmann Declaration as Exhibit "A," does not contain any of the following:

Provisions that grant cross-collateralization protection (other than replacement liens) to the prepetition secured creditor (i.e.; clauses that secure prepetition debt by post-petition assets in which the secured creditor would not otherwise have a security interest by virtue of its prepetition security agreement or applicable law).

Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or debt or the waiver of claims against the secured creditors without first giving parties in interest at least seventy-five (75) days from the entry of the interim order and the official committee of unsecured creditors, if formed, no less than sixty (60) days notice from the later of the date of its formation or the date of its retention of counsel to investigate such matters, unless otherwise directed by the court.

Provisions that seek to waive rights under 11 U.S.C. § 506(c).

Provisions that grant immediately to the prepetition secured creditor liens on the debtor's claims and causes of action arising under 11 U.S.C. §§ 544, 545, 547, 548, and 549.

Provisions that "roll over" prepetition debt of the prepetition secured creditor to postpetition debt.

Provisions which provide carveouts for administrative expenses that do not treat all professionals equally or on a pro rata basis.

Provisions in any agreement for use of cash collateral, financing or conditioning the automatic stay that in effect operate to divest the debtor-in-possession of any discretion in the

formulation of a plan or administration of the estate or limit access to the court to seek any relief under other applicable provisions of law. Such provisions include, without limitation, agreements with respect to the treatment of claims.

I declare that the foregoing is true and correct under the penalty of perjury.

Executed this 3¹th day of July 2009, in Newport Beach, California.

_____

Charles Liu

# EXHIBIT "A"

## AMENDMENT TO SECURED CONVERTIBLE PROMISSORY NOTE

This AMENDMENT TO SECURED CONVERTIBLE PROMISSORY NOTE (this "Amendment") is entered into and is effective as of _____, 2009 (the "Effective Date") between Phage Biotechnology Corporation, a Delaware corporation (the "Company") and Richard Ritter, as collateral agent ("Agent") for the persons and entities lending funds to the Company pursuant to the terms of the Loan Agreement dated November 19, 2008, as amended (including all successors and assigns, the "Lenders").

### Recitals

A.      The Company previously made and delivered to Lenders Convertible Secured Promissory Note(s) in the aggregate amount of up to $1,500,000 on November 19, 2008 ("Note(s)") pursuant to the terms of the Loan Agreement, Security Agreement and Lenders Rights Agreement all dated November 19, 2008 (together with the Note(s), the "Loan Documents"). Capitalized terms not defined herein shall have the respective meanings ascribed to them in the Loan Documents, as applicable and as amended as of the Effective Date.

B.      The Company has requested and the Lenders have agreed to make additional funds available to the Company in an amount up to $1,000,000 pursuant to the terms and conditions of the Loan Agreement, as amended, and the parties desire to amend the Note(s) to reflect the additional borrowings as provided herein.

C.      Other than as expressly set forth herein, the parties intend that all the terms of the Note(s) shall remain unchanged and in full force and effect.

NOW, THEREFORE, in consideration of the covenants and agreements herein contained, the parties hereto amend the Note(s), and covenant and agree, as follows:

1.      <u>Recitals Incorporated</u>. The recitals set forth above are hereby incorporated by reference.

2.      <u>Representations and Warranties</u>. The Company reaffirms all the representations and Warranties set forth in Section 10 of the Note(s).

3.      <u>Amendments</u>.

3.1.      <u>Principal Amount</u>. The Heading and initial paragraph of the Note(s) are hereby amended to provide that the aggregate principal amount of the Note(s) is $2,500,000.

3.2.      <u>Disbursements</u>. Section 3 of the Note(s) are hereby amended to read as follows:

"The Company may, from time to time, before the Maturity Date (as defined below), request from Lender, and Lender shall disburse, provided that the Company is not in default under any of the Loan Documents, amounts under this Note until the Company has borrowed principal in the

P:00490259.3:60375.002                                     1

amount set forth in the introductory paragraph, subject to all of the limitations, terms and conditions of the Loan Documents, at the times and in the amounts as set forth in the Loan Agreement, as amended. Each request shall be accompanied by a certificate executed by an officer of the Company attesting to the continued accuracy of the representations and warranties set forth in the Loan Agreement and full compliance with all of the Company's covenants set forth in the Loan Agreement. All disbursements made under this Note shall be recorded on attached Exhibit A."

     3.3.   Maturity. Section 4 of the Note(s) is amended to read as follows:

"Subject to Section 6, principal and any accrued but unpaid interest under this Note shall be due and payable upon the earlier of: (a) June 30, 2010, (b) the occurrence of the closing of a Funding Event ("Funding Closing Date"), or (c) the occurrence of an Event of Default (each, a "Maturity Date")."

     4.   No Other Change. Except as modified by this Amendment, the parties intend that all the terms of the Note(s) shall remain unchanged and in full force and effect. This Note is secured by the Collateral pursuant to the terms of the Security Agreement between Company and Agent on behalf of Lenders, as effected through the Lenders Rights Agreement, each as amended through the Effective Date.

The parties have executed this Amendment to Secured Convertible Promissory Note as of the Effective Date.

**COMPANY:**

**PHAGE BIOTECHNOLOGY CORPORATION**
Prof. Dr. med. Th. Stegmann

By: _____
Name: _DC Thomas Stegmann, M.D, PhD_
Title: _CEO + President_

Address:   6868 Nancy Ridge Drive, Suite 100
              San Diego CA 92121

**AGREED TO AND ACCEPTED:**

By: _RICHARD RISSER_
Name: _INTERNATIONAL LEGAL CONSULTANTS_
Title: _PROPRIETOR_

Address: _P. O. B.  40957_
_Deira, Dubai, UAE_

## LOAN EXTENSION AND AMENDMENT TO LOAN AGREEMENT

THIS LOAN EXTENSION AND AMENDMENT TO LOAN AGREEMENT (this "Extension and Amendment") is entered into as of and is effective as of _____, 2009 (the "Effective Date") between Phage Biotechnology Corporation, a Delaware corporation (the "Company") and Richard Ritter, as collateral agent ("Agent") for the persons and entities lending funds to the Company pursuant to the terms of the Loan Agreement dated November 19, 2008, as amended (including all successors and assigns, the "Lenders").

## RECITALS

A.    The Company is the debtor in Case Number 08-09859-LA7, United States Bankruptcy Court, Southern District of California (the "Court").  The Company and Lenders, directly or through Agent, are parties to a Loan Agreement, Security Agreement and Lenders Rights Agreement all dated November 19, 2008 (together with the Secured Convertible Promissory Notes delivered pursuant thereto (the "Notes", the "Loan Documents").  Capitalized terms not defined herein shall have the respective meanings ascribed to them in the Loan Documents, as applicable and as amended through the Effective Date.

B.    The Company has requested the Maturity Date of the Notes be extended and Lenders provide additional funding in an amount up to $1,000,000 to the Company.  Approval for such extension and financing was sought by motion made to the Court based on the Company's proffered need for financing to meet immediate needs for cash and based upon a budget (the "Budget") filed in connection with such request.  The Company intends to use the financing provided hereunder pursuant to the order of the Court approving this Agreement and pursuant to the Budget.

C.    The Company and Lenders, directly or through Agent, have or will be executing the following agreements:  (i) Amendment to Secured Convertible Promissory Notes reflecting loans in an updated aggregate amount of up to $2,500,000, the form of which is attached as Exhibit A, (ii) Amendment to Security Agreement, the form of which is attached as Exhibit B, and (iii) Amendment to Lender's Rights Agreement, the form of which is attached as Exhibit C.

D.    All capitalized terms not specifically defined in this Agreement have the respective meanings ascribed to them in the Loan Documents.

E.    Other than as expressly set forth herein, the parties intend that all the terms of the Loan Agreement shall remain unchanged and in full force and effect.

NOW, THEREFORE, in consideration of the covenants and agreements herein contained, the parties hereto amend the Loan Agreement, and covenant and agree, as follows:

1.    **Recitals Incorporated**.  The recitals set forth above are hereby incorporated by reference.

**2.**    **Representations and Warranties**. The Company reaffirms all the representations and Warranties set forth in Article III of the Loan Agreement.

**3.**    **Extension Fee**. As consideration for Lender's execution of this Extension and Amendment and in addition to any other sums due under the Loan Documents, the Company will pay Lenders on the date hereof, an extension fee in the amount of $75,000 on or before the Maturity Date of the Notes.

**4.**    **Amendments**.

4.1    Section 2.1 of the Loan Agreement is amended to read as follows:

"The Company agrees to take, and Lenders agree to make, upon the terms and conditions contained in this Agreement, loans in the principal sum of up to Two Million Five Hundred Thousand Dollars ($2,500,000.00) (the "Loans"). Notwithstanding the foregoing, the Lenders' commitment to lend after the Effective Date is limited to $200,000 as set forth in Section 5.1(d). The outstanding principal balance and interest of the Loans shall be repaid, pursuant to the terms of the Notes.

4.2    Section 2.2 is amended to add the following:

"In order to consummate the Loans reflected by Section 2.1, the Company will deliver to Lenders the following documents, fully executed, in the form prescribed by Lenders, together with any additional documents, items and funds as Lenders may require:

(1)    Amendments to Secured Convertible Promissory Notes.

(2)    Amendment to Security Agreement.

(3)    Amendment to Lenders Rights Agreement

(4)    Such other items as Lenders may reasonably require.

4.3    Section 5.1 is amended to add the following:

"(d) Commencing on the Effective Date, the Company shall have the ability to request, and the Lenders shall disburse, provided the Company is not in default under any of the Loan Documents and the continued accuracy of the Company's representations set forth in Article III, disbursements, in the aggregate amount of Two Hundred Thousand dollars ($200,000), within ten (10) business days of the receipt of written request from the Company to Agent. Thereafter, the Company shall have the ability to request, and the Lenders shall use their commercially reasonable efforts to disburse to the Company, subject to availability of funds, provided the Company is not in default under any of the Loan Documents and the continued accuracy of the Company's representations set forth in Article III, advances in such amounts and at such times as Lenders may determine, following the receipt of written request from the Company to Agent.

4.4    The third sentence of Section 5.2 is amended to include the reference to subsection 5.1 (d).

2                                                   **21**

4.5    The Exhibits to the Loan Agreement are amended to include by reference the following:

(1)    Form of Amendment to Secured Convertible Promissory Notes.

(2)    Form of Amendment to Security Agreement.

(3)    Form of Amendment to Lenders Rights Agreement.

**5.**    <u>**No Other Change**</u>. Except as modified by this Amendment, the parties intend that all the terms of the Loan Agreement shall remain unchanged and in full force and effect.

*[Signature page follows.]*

**Signature Page for Extension and Amendment to Loan Agreement**

IN WITNESS WHEREOF, the parties have duly executed this Extension and Amendment to Loan Agreement as of the Effective Date.

COMPANY:                        PHAGE BIOTECHNOLOGY CORPORATION, a
                                Delaware corporation

                                                    Prof. Dr. med. Th. Stegmann

                                By: _____
                                Name: _Dr. Thomas T. Stegmann, MD, PhD_
                                Its: _CEO + President_
                                     _Phage_

LENDERS:                        _____


                                By: _RICHARD RITTER_
                                Name: _INTERNATIONAL LEGAL CONSULTANTS_
                                Its: _PROPRIETOR_


                                By: _____
                                Name: _____
                                Its: _____


                                _____


                                By: _____
                                Name: _____
                                Its: _____


                                _____


                                By: _____
                                Name: _____
                                Its: _____


P:0490258.2:60375.002                        4

23

## AMENDMENT TO SECURITY AGREEMENT

This Amendment to Security Agreement (this "Amendment") is entered into as of_____, 2009 (the "Effective Date"), by and between Phage Biotechnology Corporation, a corporation organized and existing under the laws of the State of Delaware (the "Company"), and Richard Ritter in his capacity as Agent (as defined in Lenders Rights Agreement as amended as of the Effective Date) for the benefit of Lenders (as defined in the Loan Agreement as amended as of the Effective Date) (collectively, the "Lenders") as secured party.  The parties agree as follows:

### Recitals

A.    The Company is the debtor in Case Number 08-09859-LA7, United States Bankruptcy Court, Southern District of California (the "Court").  The Company and Lenders are parties to a Loan Agreement, Security Agreement and Lenders Rights Agreement all dated November 19, 2008 (together with the Secured Convertible Promissory Notes delivered pursuant thereto (the "Notes", the "Loan Documents").  Capitalized terms not defined herein shall have the respective meanings ascribed to them in the Loan Documents, as applicable and as amended through the Effective Date.

B.    The Company has requested the Maturity Date of the Notes be extended, and Lenders provide additional funding in an amount up to One Million dollars  ($1,000,000) to the Company for an aggregate loan amount of up to Two Million Five Hundred Thousand dollars $2,500,000.

C.    The parties desire to amend the Security Agreement  to incorporate the additional indebtedness referred to in Section 1.2 and to amend Exhibit A to add additional Collateral.

D.    Other than as expressly set forth herein, the parties intend that all the terms of the Security Agreement shall remain unchanged and in full force and effect.

NOW, THEREFORE, in consideration of the covenants and agreements herein contained, the parties hereto amend the Security Agreement, and covenant and agree, as follows:

1.    Recitals Incorporated.  The recitals set forth above are hereby incorporated by reference.

2.    Amendments.

2.1    Definitions. The first paragraph of Section 2 is amended  to read as follows:

"All capitalized terms not specifically defined in this Agreement have the meaning ascribed to them in the Loan Agreement, Notes, or Lenders Rights Agreement, as applicable, and as amended through the Effective Date, or if not defined in this Agreement, the Loan Agreement, Notes, or Lenders Rights Agreement shall have the meanings set forth in the California Uniform Commercial Code (the "UCC").  In the event of any conflict between this Agreement and the Notes, Loan Agreement, or Lenders Rights Agreement, the Loan Agreement shall control. For purposes of this Agreement, the following definitions shall apply:"

2.2    Exhibit A is amended to add the following Application:

Application No. 12/024,889, Pub. No US 2008/0193992; Kluyveromyces Strains Metabolizing Cellulosic and Hemicellulosic Materials.

    3.    <u>No Other Change</u>.  Except as modified by this Amendment, the parties intend that all the terms of the Security Agreement shall remain unchanged and in full force and effect.

*[Signatures on Following Page]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**The Company:**                                          **Agent:**

PHAGE BIOTECHNOLOGY
CORPORATION

By: _____          By: _____

Name: _____          Richard Ritter

Title: _____

26

## EXHIBIT A
## INTELLECTUAL PROPERTY

|   | Patent No. | Issue Date | Title |
|---|---|---|---|
| 1 | 7,435,804 | October 14, 2008 | Method for obtaining single chain antibodies to human interferon .alpha.2b |
| 2 | 7,344,876 | March 18, 2008 | Kluyveromyces strains metabolizing cellulosic and hemicellulosic materials |
| 3 | 6,794,162 | September 21, 2004 | Phage- dependent super-production of biologically active protein and peptides |
| 4 | 6,773,899 | August 10, 2004 | Phage-dependent superproduction of biologically active protein and peptides |
| 5 | 6,642,026 | November 4, 2003 | Method of producing biologically active human acidic fibroblast growth factor and its use in promoting angiogenesis |
| 6 | 6,268,178 | July 31, 2001 | Phage- dependent super-production of biologically active protein and peptides |
| 7 | 7,252,818 | August 7, 2007 | Method of producing biologically active human acidic fibroblast growth factor and its use in promoting angiogenesis |

|   | Application No. | Publication No. | Title |
|---|---|---|---|
| 1 | 10/947513 | 20050059129 | Biologically active material conjugated with biocompatible polymer with 1:1 complex, preparation method thereof and pharmaceutical composition comprising the same |
| 2 | 11/187,522 | 20050281778 | Human growth hormone conjugated with biocompatible polymer |
| 3 | 11/314926 | 20060134736 | Human growth hormone conjugated with biocompatible polymer |
| 4 | 12/024,889 | 20080193992 | Kluyveromyces Strains Metabolizing Cellulosic and Hemicellulosic Materials |

## AMENDMENT TO
## LENDERS RIGHTS AGREEMENT

This Amendment to Lenders Rights Agreement (this "Amendment") is entered into to be effective as of _____, 2009 (the "Effective Date"), by and among the undersigned lenders, (the "Lenders" or, individually, a "Lender"), Richard Ritter ("Ritter") as the initial collateral agent for the benefit of Lenders,   and Phage Biotechnology Corporation, a Delaware corporation (the "Company") as follows.

### Recitals

A.    The Company and the Lenders directly or through Agent are parties to a Loan Agreement, Security Agreement and Lenders Rights Agreement all dated November 19, 2008 (together with the Secured Convertible Promissory Notes delivered pursuant thereto (the "Note"), the "Loan Documents"). Capitalized terms not defined herein shall have the respective meanings ascribed to them in the Loan Documents, as applicable and as amended through the Effective Date.

B.    The Company has requested the Maturity Date of the Notes be extended and Lenders provide additional funding in an amount up to $1,000,000 to the Company. By this Amendment, each Lender further agrees supplement their appointment of Agent as such Lenders' agent and attorney-in-fact with the right and authority to execute and deliver (i) an Extension and Amendment to Loan Agreement dated as of the Effective Date ("Extension and Amendment") (ii) Amendments to Secured Convertible Promissory Notes reflecting loans in an updated aggregate amount of up to $2,500,000, the form of which is attached as Exhibit A to the Extension and Amendment, and (iii) an Amendment to Security Agreement, the form of which is attached as Exhibit B to the Extension and Amendment, all of which are incorporated herein by this reference.

C     Capitalized terms not defined herein shall have the respective meanings ascribed to them in the Loan Documents, as applicable and as amended through the Effective Date.

NOW, THEREFORE, in consideration of the covenants and agreements herein contained, the parties hereto amend the Lender Rights Agreement, and covenant and agree, as follows:

1.    Recitals Incorporated. The recitals set forth above are hereby incorporated by reference.

2.    Amendment. Article 3 of the Lenders Rights Agreement is amended to add a Section 3.4 which reads as follows:

"3.4    The Lenders, and each of them, hereby appoint Agent as such Lenders' agent and attorney-in-fact with the right and authority to execute and deliver (i) an Extension and Amendment to Loan Agreement dated as of the Effective Date ("Extension and Amendment") (ii) Amendments to Secured Convertible Promissory Notes reflecting loans in an updated aggregate amount of up to $2,500,000, the form of which is attached as Exhibit A to the Extension and Amendment, and (iii) an Amendment to Security Agreement, the form of which is attached as Exhibit B to the Extension and Amendment, all of which are incorporated herein by this reference.

3.     <u>No Other Change</u>.  Except as modified by this Amendment, the parties intend that all the terms of the Lenders Rights Agreement shall remain unchanged and in full force and effect.

*SIGNATURE PAGE FOLLOWS*

**Company:**

Phage Biotechnology Corporation,
a Delaware corporation

*Prof. Dr. med. Th. Stegmann*

By: _____

Name: *Dr. Thomas T. Stegmann, M.D., PhD*

Its: *CEO + President*

Address: *6868 Nancy Ridge Drive*
*Suite 100*
*San Diego, CA 92121*

**Agent:** _____

Richard Ritter

Address: *P.O.B. 40992*
*Deira, Dubai, UAE*

**Lenders:**

Signature: _____
Name: _____
Address: _____
_____

Signature: _____
Name: _____
Address: _____
_____

Signature: _____
Name: _____
Address: _____
_____

P:00400256:60375.002                    3

.

# EXHIBIT "B"



**PHAGE**
Biotechnology Corp.
Short Term Cash Flow

Prepared July 29, 2009

| | | | | |
|---|---|---|---|---|
| **Beginning Cash Balance** | $71,250 | $32,250 | $250 | $71,250 |
| Available to Draw - Current DIP Agreement | - | - | - | - |
| Committed Funds - Amended DIP Agreement | - | - | - | - |
| Funds as Available - Amended DIP Agreement | - | - | - | - |
| **Cash Available** | 71,250 | 32,250 | 250 | 71,250 |
| | | | | |
| **Manufacturing Expenses** | | | | |
| Payroll and Benefits | - | 17,500 | - | 17,500 |
| Rents, Utilities, Maintenance | 23,500 | 500 | - | 24,000 |
| Direct and Indirect Supply Costs + O/H | 500 | 500 | - | 1,000 |
| Total Operating Expenses | 24,000 | 18,500 | - | 42,500 |
| | | | | |
| **Administrative Expenses** | | | | |
| Payroll and Benefits | - | 13,000 | - | 13,000 |
| Consultants | 14,500 | - | - | 14,500 |
| Legal | - | - | - | - |
| Overhead - Insurance, phones, travel | 500 | 500 | - | 1,000 |
| Total Admin Expenses | 15,000 | 13,500 | - | 28,500 |
| | | | | |
| **Research and Development** | | | | |
| BS Biology | - | - | - | - |
| | | | | |
| *Total Cash Costs of Operations* | 39,000 | 32,000 | 0 | 71,000 |
| | | | | |
| **Cash Balance** | **$32,250** | **$250** | **$250** | **$250** |

31



PHAGE
Biotechnology Corp.
Short Term Cash Flow

Prepared July 29, 2009

# EXHIBIT "C"



**PHAGE Biotechnology Corp.**

## 2009 Mid-Year Cash Operating Forecast

| | | | | | |
|---|---:|---:|---:|---:|---:|
| **Cash Balance** | $71,250 | $31,129 | $66,007 | $78,886 | $71,250 |
| Available to Draw - Current DIP Agreement | 200,000 | | | | 200,000 |
| Committed Funds - Amended DIP Agreement | | | | | |
| Funds as Available - Amended DIP Agreement | | 250,000 | 250,000 | 150,000 | 650,000 |
| **Cash Available** | 271,250 | 281,129 | 316,007 | 228,886 | 921,250 |
| **Manufacturing Expenses** | | | | | |
| Payroll and Benefits | 52,213 | 52,213 | 52,213 | 52,213 | 208,852 |
| Rents, Utilities, Maintenance | 30,000 | 30,000 | 30,000 | 30,000 | 120,000 |
| Direct and Indirect Supply Costs + O/H | 15,000 | 30,000 | 25,000 | 15,000 | 85,000 |
| Total Operating Expenses | 97,213 | 112,213 | 107,213 | 97,213 | 413,852 |
| **Administrative Expenses** | | | | | |
| Payroll and Benefits | 21,408 | 21,408 | 21,408 | 21,408 | 85,633 |
| Consultants | 14,500 | 14,500 | 14,500 | 14,500 | 58,000 |
| Legal | 85,000 | 10,000 | 10,000 | 10,000 | 115,000 |
| Overhead - Insurance, phones, travel | 10,000 | 10,000 | 10,000 | 10,000 | 40,000 |
| Total Admin Expenses | 130,908 | 55,908 | 55,908 | 55,908 | 298,633 |
| **Research and Development** | | | | | |
| BS Biology | 12,000 | 12,000 | 12,000 | 12,000 | 48,000 |
| **Clinical Trials** | | | | | |
| FGF-1 for Wound Healing - 1A | | 35,000 | 62,000 | 62,000 | 159,000 |
| *Total Cash Costs of Operations* | 240,121 | 215,121 | 237,121 | 227,121 | 919,485 |
| **Cash Balance** | $31,129 | $66,007 | $78,886 | $1,765 | $1,765 |

33

# PHAGE
### Biotechnology Corp.

## 2009 Mid-Year Cash Operating Forecast

| In re: | CHAPTER 11 |
|---|---|
| Phage Biotechnology Corporation<br><br>Debtor(s). | CASE NO. 08-09859-LA11 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

660 Newport Center Drive, 4th Floor, Newport Beach, CA 92660.  The foregoing document described **DEBTOR'S EMERGENCY MOTION FOR ORDER APPROVING ADDITIONAL LOANS UNDER DEBTOR-IN-POSSESSION LOAN; DECLARATIONS IN SUPPORT THEREOF** will be served or was served in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**:
Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 31, 2009 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- Michael D. Breslauer    mbreslauer@swsslaw.com, wyones@swsslaw.com
- Charles Liu    cliu@winthropcouchot.com, pj@winthropcouchot.com
- David A. Ortiz    david.a.ortiz@usdoj.gov
- Matthew J. Riopelle    mriopelle@foley.com
- United States Trustee    ustp.region15@usdoj.gov
- Alan Vanderhoff    alan.vanderhoff@vanderhofflaw.com, alanvanderhoff@cox.net
- Victor A. Vilaplana    vavilaplana@foley.com
- Marc J. Winthrop    pj@winthropcouchot.com

☐ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL:**
On July 31, 2009 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows.

*SERVICE LIST ATTACHED*

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL:**
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, July 31, 2009 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.
*SERVICE LIST ATTACHED*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 31, 2009 | Viann Corbin | /s/ Viann Corbin |
|---|---|---|
| Date | Type Name | Signature |

# SERVICE LIST

## SERVICE BY ELECTRONIC-MAIL

Phage Biotechnology Corporation
Attn: Loren King, CFO
1635 Village Center Circle, Suite 260
Las Vegas, NV 89134
stegmann-petersberg@t-online.de
Lorenking2002@yahoo.com

Phage
Special Notice/20 Largest/Secured
Document No. 125972

Jawaher Bint Aball
Malek Al Sheikh
P.O. Box 5593
Riyadh 11132 Saudi Arabia
**jademaliklol@yahoo**

Shellac Limited
Attn: Corporate Officer
2nd Fl. Sixty Circular Rd
Douglas Isle of Man IM1 ISA UK
peter.crompton@abacusiom.com

MIC-Bjarne Carlsen c/o Armacup
Maritime Svcs Ltd Lvl 5 Harbour View
Bldg 152 Quay St PO Box 106 001
Dwntwn Auckland New Zealand
**biarnecarlsen@xtra.co.nz**

International Legal Consultants
Solomon Ward Seidenwurm & Smith,
LLP
Michael D. Breslauer, Esq.
401 "B" Street, #1200
San Diego, CA 92101
mbreslauer@swsslaw.com

~~Forest Nominees Limited~~
~~Attn: Corporate Officer~~
~~PO Box 328 St. Peter Port~~
~~Channel Islands GY1 3TY UK 01481~~
~~251515~~  Chngd per 3/2 e-mail-see
below
~~caldwell@caldwell.ee~~

James Donald Greig
4B Parklane, Matilda Hospital
41 Mount Kellett Road
The Peak SAR Hong Kong
**jdgreig@netvigator.com**

Anthony Hall
c/o Man Invsts Hong Kong Ltd
#1301 Chrtr Hse-8 Connaught Rd Cnt
Hong Kong China
**ahallo888@gmail.com**

European Pens Mgmt Ltd-Ttees
Scheme 11527, Mr. C. Melvin
Unit 11 Manor Farm, Chilmark
c/o Mr. Paul Gillham
Salisbury Wiltshire SP3 5AF UK
clifton@melvin.eu.com

TCI Group Holdings
Attn: Corporate Officer
Office 2701, 148 Electric Rd
Hong Kong
**john@tci.com.hk**

Softcapital Inc.
Attn: Corporate Officer
7-9 Kyohashi 2 Cho-Me
Chuo-ku Tokyo 104-0031 Japan
**mail@softcapital.co.jp**

Khalid Dawood Al Faddagh
Petron Corp 358 Sen Gil Puyat Ave
Makati City Metro Manila
1200 Philippines (63918) 906-8000
kdfaddagh@petron.com

2nd Amendment 1/9/09
Committee Member
Sonomi Tsuyuzaki
4 Ballinakill Vale
Dunmore Rd., Waterford, Ireland
**robles224@yahoo.com**

International Legal Consultants
Attn: Corporate Officer
PO Box 40992-10-02 Peasl Bdg Deira
Dubai United Arab Emirates
**rcrlawpemirates.net.ae**

Toru Ueda P.O. Box 88
1 Grenville, St. Heiler
c/o Ronan Walsh HSBC Priv Bank
Jersey Channel Isl JE4-9PF UK
tm-ueda@ff-iij4u.or.jp

John Philip Mappin
14 Crestwood Ave.
Linwood, NJ 08221
**mappin1@verizon.net**

Taghreed Altassan
No. 8 deba st. Mohamadiya
P.O. Box 16124
Riyadh 11464 Saudi Arabia
96658388888
**t_altassan@yahoo.com**

Committee Member
Jonathan P. Kornberg
2a, 72 Mount Kellett Road
The Peak SAR Hong Kong
jpkorn2@yahoo.com

RSN 12/1/08

The PBAA JPY Fund Limited
Attn: Corporate Officer
5, rue Jean Monnet
L-2180 Luxembourg
**office@interasset.jp**

Uli Bangerter
11 chemin de Pallud
Chernex 1822 Switzerland
bangerteruli@hotmail.com

Committee Counsel
Foley & Lardner LLP
Victor A. Vilaplana, Esq.
401 West Broadway, #2100
San Diego, CA 92101
**vavilaplana@foley.com**

EMAIL UPDATED – SEE BELOW
~~Committee Member~~
~~Fabio L.B. Pelli~~
~~PO Box 1718~~
~~Ch-8027 Zurich~~
~~Switzerland~~
~~Clinton@melvin.eu.com~~

Committee Member
BMR-6828 Nancy Ridge Dr., LLC
Kevin Simansen
17190 Bernardo Center Dr.
San Diego, CA 92128
Kevins@biomedrealty.com

Committee Member
Dr. Jonathan Paul Kornberg
2A, 72 Mt Kellett Road
The Peak
Hong Kong
Jpkorn2@yahoo.com

2nd Amnd 1/12/09

Committee Member
Mr. Anthony Hall
c/o Man Investments (HK) Ltd
1301 Charter House
8 Connaught Road
Central, Hong Kong/ China
ahallo888@gmail.com

Committee Member
John Philip Maffin
Jolyn Philip Maffin
14 Crestwood Avenue
Linwood, NJ 08221
mappin1@verizon.net

Committee Member
Fabio L.B. Pelli
PO Box 1718
Ch-8027 Zurich
Switzerland
flbpelli@bloomberg.net

2nd Amd 1/12/09

2/26/09 RSN

Committee Member
Clifton Melvin
Argosy Burtons Lane
Chalpont SC Giles Buckr
UK HP8 4BL
Clifton@melvin.eu.com

Bank Sal.Oppenheim Jr., & Cie
(Switzerland) Ltd.
Uraniastrasse 28
8022 Zurich
Nino.Colesanto@oppenheim.ch
**mail@attendusmanagement.com**

Iron Mountain Information Management,
Inc.
c/o Bartlett Hackett Feingerg P
Attn: Frank F. McGinn, Esq.
155 Federal St., 9th Fl.
Boston, MA 02110
**Ffm@vostonbusinesslaw.com**

### VIA FIRST CLASS MAIL

Via Mail
Phil Frey
5005 SE Williams
Stuart, Florida 34997

VIA MAIL
Canta Rana Ranch L.P.
Attn: Managing Member
11750 Sorrento Valley Road, Suite 209
San Diego, CA 92121

VIA MAIL
Party to agreement to be rejected
Cardio Vasculat BioTherapeutics, Inc.
Mickael A. Flaa, Chief Financial
Officer
1635 Village Center Circle, #250
Las Vegas, NV 89134

Via Mail
U.S. Trustee's Office
David Ortiz, Esq.
402 W. Broadway, Suite 600
San Diego, CA 92101-8511

Via Mail
Proposed Landlord
Champion Pacific LP
Mr. David Johnson
210 Pasadena Ave.
South Pasadena, CA 91030

VIA MAIL
Gadah Inc. c/o CICB Finan Ctr
2nd Fl., PO Box 1170
George Town, Grand Caymay
Cayman Islands, KY11-1102